BEN NISENBAUM, ESQ., SBN 222173
JAMES COOK, ESQ., SBN 300212
KATHERINE MACELHINEY, ESQ., SBN 355532
**Burris Nisenbaum Curry & Lacy, LLP**
7677 Oakport Street, Suite 1120
Oakland, CA 94621
Telephone: (510) 839-5200
Facsimile: (844) 273-6873
Email:  Ben.Nisenbaum@johnburrislaw.com
Email:  James.Cook@johnburrislaw.com
Email:  Katherine@bncllaw.com

*Attorneys for Plaintiffs James Gay and Bonnie Gay*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES GAY, individually and as successor-in-interest to Decedent, BRANDON GAY; BONNIE GAY, individually and as co-successor-in-interest to Decedent, BRANDON GAY, <br><br>            Plaintiffs, <br><br>    vs. <br><br>COUNTY OF SANTA CLARA, a municipal corporation; KRISTIN WALSH, individually and in her capacity as a Medical Doctor for the COUNTY OF SANTA CLARA; ALEXANDER CHYORNY, individually and in his capacity as a Medical Doctor for the COUNTY OF SANTA CLARA;  and DOES 1-50, inclusive, individually, jointly and severally, <br><br>            Defendants. | CASE NO.: <br><br>COMPLAINT FOR DAMAGES <br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.      This action seeks compensatory damages from Defendant for violating 42 U.S.C §

1983, the Eighth Amendment, and California state law in connection with the negligence of care of

Brandon Gay, the decedent, who died as a result of the negligence of Defendant Santa Clara County personnel (DOES) at the Elmwood Correctional Facility. It is alleged that these violations and torts were committed during the course and scope of the above-mentioned law enforcement officers' employment with the aforementioned government agencies and DOES 1-50.

## JURISDICTION

2.     This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code, §§ 1331 and 1343 confer jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in the County of Contra Costa, California, which is within the judicial district of this Court.  This Court also has supplemental jurisdiction over PLAINTIFFS' state law causes of action under 28 U.S.C., § 1367. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims which are so related to the federal claims in that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this District and all incidents, events, and occurrences giving rise to this action occurred in this district.

## ADMINISTRATIVE PREREQUISITES

4.     Plaintiffs are required to comply with an administrative tort claim requirement under California Government Code, Section 910. On January 6, 2025, Plaintiffs timely and properly filed a tort claim pursuant to Cal. Gov. Code § 910 et seq., with the Office of the County Counsel for Defendant County of Santa Clara, California. On February 13, 2025, Plaintiffs were notified by mail that their administrative tort claim was rejected. Plaintiffs have exhausted all administrative remedies pursuant to California Government Code § 910. This action is timely filed within all applicable statutes of limitation.

## PARTIES

5.     Decedent, BRANDON GAY ("DECEDENT" or "BRANDON GAY" was an

individual residing in the state of California. DECEDENT and each of the Plaintiffs identified in this action are citizens of the United States of America.

6. Plaintiff JAMES GAY (hereinafter, "PLAINTIFFS") is a resident of California and a United States Citizen. He sues individually and as co-successor-in-interest to Decedent, Brandon Gay.

7. Plaintiff BONNIE GAY (hereinafter, "PLAINTIFFS") is a resident of California and a United States Citizen. She sues individually and as co-successor-in-interest to Decedent, Brandon Gay.

8. Defendant SANTA CALRA COUNTY ("COUNTY") is a municipal corporation duly authorized and existing as such in and under the laws of the State of California. At all times herein mentioned, Defendant COUNTY has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the Defendant COUNTY, its Sheriff's Department, its detention and/or correction facilities including Elmwood Correctional Facility, and the tactics, methods, practices, customs and usage by all COUNTY employees, agents, and assigns. At all relevant times, Defendant COUNTY was the employer of DOES 1-50 individually and in their official capacity.

1. At all relevant times, Defendant KRISTIN WALSH was employed by Defendant COUNTY as a Medical Doctor. She is being sued individually and in his official capacity as a correctional facility staff member for the Defendant COUNTY. Plaintiffs contend Defendant WALSH was aware of the risk of great bodily injury and or death involving Decedent BRANDON GAY, and with reckless disregard for Decedent BRANDON GAY'S life, safety, and rights, to adhere to the standard of care and failed to provide reasonable medical accommodations for Decedent, and was negligent in her treatment of Decedent BRANDON GAY.

9. At all relevant times, Defendant ALEXANDER CHYORNY was employed by Defendant COUNTY as a Medical Doctor. He is being sued individually and in his official capacity as a correctional facility staff member for the Defendant COUNTY. Plaintiffs contend Defendant CHYORNY was aware of the risk of great bodily injury and or death involving Decedent

BRANDON GAY, and with reckless disregard for Decedent BRANDON GAY'S life, safety, and rights, to adhere to the standard of care and failed to provide reasonable medical accommodations for Decedent, and was negligent in her treatment of Decedent BRANDON GAY.

10. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each defendant so named is responsible in some manner for the injuries and damages sustained by Decedent and Plaintiffs as set forth herein. Moreover, Plaintiffs alleges that each of Defendants DOES 26 through 50 were responsible for the training, supervision, and/or conduct of the Defendant County's Sheriff deputies, correctional facility personnel (including medical personnel), and/or agents, employees and assigns involved in the conduct herein. Plaintiffs will amend this Complaint to state the names and capacities of DOES 1-50, inclusive, when they have been ascertained.

## FACTUAL ALLEGATIONS

11. The incident took place on November 17, 2024, at the Elmwood Correctional Facility located at 701 South Abel Street, Milpitas, California. Sheriff's Department deputies and/or correctional staff for the Defendant COUNTY, including but not limited to KRISTIN WALSH, ALEXANDER CHYORNY, and "DOES 1-50", failed to maintain safe custodial conditions and to provide adequate medical care of DECEDENT, Mr. Brandon Gay. At the time, DECEDENT was a pre-trial detainee in the custody of and under the complete care and control of Defendant COUNTY.

12. On Friday, November 15, 2024, City of Milpitas Police Department officers and/or COUNTY Sheriff Department deputies arrested DECEDENT. Upon information and belief, the arrest involved alleged possession of drug paraphernalia and/or public intoxication. At approximately 09:32 A.M., COUNTY personnel at SCVH-CHS conducted a medical screening of BRANDON GAY in which he screened "positive" for Amphetamines, Benzodiazepines, and Fentanyl. During this medical clearance intake, BRANDON GAY disclosed to COUNTY correctional medical staff that he used both fentanyl and Xanax the day before he came into COUNTY custody. Mr. GAY also informed the COUNTY correctional medical staff that he sometimes experienced seizures when

coming down from Xanax. However, COUNTY correctional medical staff cleared BRANDON GAY to be transported to COUNTY custody in a normal correctional facility housing unit without any higher level of care.

13. Deputies for Defendant COUNTY'S Sheriff Department then transferred BRANDON GAY from the COUNTY'S Main Detention Facility medical unit in San Jose (SCVH-CHS) to COUNTY'S Elmwood Correctional Facility located in Milpitas, California.

14. On November 15, 2024, COUNTY correctional medical staff including but not limited to KRISTIN WALSH, M.D., and DOES ordered Initial Clinical Institute Withdrawal Assessments every shift for at least seventy-two (72) hours, Clinical Opiate Withdrawal monitoring two times per day, and to reorder assessments every four hours every day. Upon information and belief, COUNTY deputies and/or Correctional Facility personnel expected BRANDON GAY to remain in COUNTY custody at the Elmwood Correctional Facility until his arraignment hearing scheduled for November 19, 2024. Upon information and belief, COUNTY medical staff failed to follow this order, leading to BRANDON GAY'S death.

15. On Sunday, November 17, 2024, at approximately 1:05 P.M., KRISTIN WALSH, M.D., conducted a Custody Health Services Progress checkup of BRANDON GAY in which she started Clinical Opiate Withdrawal Services and administered suboxone taper to BRANDON GAY for sxatic relief. At approximately 5:00 P.M., ALEXANDER CHYORNY M.D. conducted a wellness check on BRANDON GAY at Elmwood Correctional Facility, in BRANDON GAY'S cell. Until that time, Defendant COUNTY'S employees at the Elmwood Correctional Facility failed to monitor BRANDON GAY'S health and/or symptoms as prescribed. During the wellness check, BRANDON GAY was reported as being able to move about the cell but expressed to the COUNTY personnel conducting the check that he was tired and wanted to go back to sleep.

16. Approximately three hours later, at 8:48 P.M. on November 17, 2024, COUNTY Correctional Facility staff found BRANDON GAY lying unconscious on the floor of the Facility's dormitory showers. BRANDON GAY was suffering obvious signs of a serious medical emergency. COUNTY Correctional Facility staff called a "Man down." COUNTY staff transported BRANDON

GAY by wheelchair from the Elmwood Correctional Facility's dorm area to a medical area. COUNTY correctional facility personnel reported that BRANDON GAY'S pulse was faint, his breathing was shallow, he was unresponsive to pain stimuli, and that his skin was cool to touch. COUNTY Correctional Facility medical personnel unsuccessfully attempted to start IV's on BRANDON GAY'S arms.

17. At approximately 8:57 P.M. on November 17, 2024, COUNTY Correctional Facility medical personnel administered Narcan, an opioid antagonist, a medication used to reverse or reduce the effects of opioids, to BRANDON GAY. At approximately 9:04 P.M., a second dose of Narcan was administered. After the second dose of Narcan, COUNTY Correctional Facility staff transferred BRANDON GAY to the floor in supine position. Two minutes later, at approximately 9:06 P.M., a third dose of Narcan was given to BRANDON GAY by COUNTY personnel. Within one minute, at 9:07 P.M., BRANDON GAY lost his pulse.

18. After an unknown amount of time, Defendant COUNTY Sheriff's deputies and/or Elmwood Correctional Facility staff called for emergency responders. Eventually, EMT's and/or other emergency medical responders arrived and transported DECEDENT to San Jose Regional Medical Center. Upon information and belief, the presently-unidentified EMT's acted within the scope of a contractual agreement with the Defendant COUNTY to provide medical transportation services to custodial patients within the COUNTY's detention facilities.

19. Upon their arrival at San Jose Regional Medical Center, BRANDON GAY was rushed to the ICU. According to the paramedics' reports, BRANDON GAY suffered cardiac arrest at some point prior to arriving at the hospital.

20. On November 20, 2024, PLAINTIFFS and other loved ones made the heartbreaking decision to terminate BRANDON GAY'S life support. BRANDON GAY died in the ICU at San Jose Regional Medical Center shortly thereafter.

21. Autopsy findings revealed that in addition to cardiac arrest, DECEDENT suffered nine broken ribs and a collapsed lung. DECEDENT also presented signs of liver and kidney failure. Lab

reports taken by San Jose Regional Medical Center personnel indicate that DECEDENT had been in prone position for a prolonged period of time.

22. As a result, the Defendant COUNTY, through acts and/or omissions by its deputies, agents, and/or employees (DOES 1-50), caused injuries resulting in the death of Decedent, BRANDON GAY.

## DAMAGES

23. As a consequence of Defendant's negligence and violations under 42 U.S.C. § 1983 and the Americans With Disabilities Act, Plaintiff was physically, mentally, and emotionally injured and damaged as a proximate result of Defendant's conduct.

24. Plaintiffs found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) in the event that he is the prevailing parties in this action under 42 U.S.C. §§ 1983 and 1988.

## FIRST CAUSE OF ACTION
**(Violations of Decedent's Fourth and Fourteenth Amendment Rights to Conditions of Safe Confinement and to be Protected While in Custody)**
**(42 U.S.C. § 1983)**
**(PLAINTIFFS as Co-Successors-in-Interest to DECEDENT, Against ALL DEFENDANTS)**

25. Plaintiffs hereby re-allege and incorporate by reference herein all paragraphs in this Complaint.

26. By the actions and/or omissions described herein, under color of law, Defendants COUNTY and DOES 1-50 deprived DECEDENT of the following clearly established and well-settled rights protected by the Fourth and Fourteenth Amendment of the United States Constitution:

    a. To not be deprived by the State of any life, liberty, or property, without due process of law;

    b. To be free from unjustified intrusions to the body;

    c. To receive sufficient information to exercise these rights voluntarily; and

    d. To be protected while in custody.

27. Under the Fourth and Fourteenth Amendments of the U.S. Constitution, as a pretrial detainee, DECEDENT was at all relevant times vulnerable and dependent upon the Defendant COUNTY, its Sheriff's Department, and its deputies, law enforcement agents, and employees (DOES 1-50). DEFENDANTS, correspondingly, had special control over DECEDENT'S welfare while he was detained in the COUNTY-run Correctional Facility.

28. The acts and/or omissions of DOES 1-50 described herein amounted to a reckless disregard for DECEDENT'S life, health, and safety. On November 15, 2024, withdrawal assessments and wellbeing checks were ordered by COUNTY medical staff. No such checks took place until November 17, 2024 at approximately 5:00 P.M. in DECEDENT'S cell at COUNTY's Elmwood Correctional Facility. Then, at approximately 8:56 P.M., DECEDENT was found unconscious on the floor of the COUNTY Facility showers. DOES 1-50 failed to provide adequate welfare services, detoxification services, withdrawal assessments, welfare checks, and/or medical care in response to DECEDENT'S serious medical need which was known or reasonably should have been ascertained by COUNTY Defendants DOES 1-50.

29. Deputies and correctional facility staff for Defendant COUNTY are on the front lines of mental health and substance abuse related emergencies for pretrial detainees under COUNTY custody and control. Given the prevalence of overdoses in California by users of opioid and synthetic drugs like fentanyl, it was highly foreseeable that detoxification and/or overdose prevention care would be necessary to utilize on pretrial detainees within such facilities as COUNTY'S Elmwood Correctional Facility.

30. Defendants DOES 1-50 knew, or reasonably should have ascertained that DECEDENT required detoxification medications and/or treatment to prevent serious injury and/or death from such complications. DECEDENT was arrested while in possession of opioids and was observed by COUNTY deputies and staff as exhibiting warning signs: first as being observably under the influence of opioids upon entering the COUNTY's custody, then as exhibiting medically-serious signs of withdrawal.

31. DEFENDANTS failed to provide DECEDENT with detoxification services– or alternatively, any adequate medical care– to address DECEDENT'S serious and life-threatening medical need. DOES 1-50 failed to identify that DECEDENT was at risk of opioid related health crisis. DOES 1-50 failed to initiate detoxification services to DECEDENT despite knowing he had high-risk substances in his system when he entered Defendant COUNTY custody, and by failing to monitor DECEDENT'S condition while his medical emergency became more and more serious. At all relevant times, DOES 1-50 failed to provide adequate treatment to DECEDENT with deliberate indifference to his health and safety.

32. DECEDENT died as a result of the acts and/or omissions of DOES 1-50.

33. The above-described conduct by DOES 1-50 was objectively unreasonable and resulted in unsafe and life-threatening conditions of confinement in violation of DECEDENT's rights to safe conditions of pretrial confinement guaranteed by the Fourteenth Amendment.

34. DEFENDANTS' conduct shocks the conscious, especially given that it was highly foreseeable to COUNTY's Sheriff's Department and correctional facilities staff (including but not limited to DOES 1-50) that detoxification medications and/or other forms of treatment for opioid withdrawal are necessary in pretrial custodial situations. Defendant COUNTY failed to require that its employees including DOES 1-50 follow a protocol to administer withdrawal checks and/or treatment to prevent serious injury or death to persons in COUNTY custody.

35. Defendants COUNTY and DOES 1-50 were deliberately indifferent to DECEDENT'S serious medical needs.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**(Violation of the Fourteenth Amendment of the United States Constitution –**
**Failure to Summon Medical Care)**
**(42 U.S.C. § 1983)**
**(PLAINTIFFS, as successors in interest to DECEDENT, against ALL DEFENDANTS)**

36. Plaintiffs hereby re-allege and incorporate by reference herein all paragraphs in this Complaint.

37. The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires a responsible governmental agency to provide medical care to pretrial detainees. At all relevant times, DECEDENT was a pretrial detainee, as he died in COUNTY's Correctional Facility from his medical needs being ignored while in COUNTY custody before his November 19, 2024, hearing to be arraigned on the charges for which he was allegedly arrested and brought into COUNTY custody. Therefore, constitutional questions regarding the circumstances of DECEDENT'S confinement are properly addressed under the due process clause of the Fourteenth Amendment.

38. Defendants COUNTY and DOES had a legal responsibility to provide for the health and safety of DECEDENT while in custody of each entity's law enforcement agencies. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires responsible governments and their agents to secure medical care for pretrial detainees by either promptly summoning the necessary medical help or by taking the sick or injured detainee to a hospital.

39. The above-described acts and/or omissions of DOES 1-50 as agents of Defendant COUNTY, violated DECEDENT'S rights as provided for under the Fourteenth Amendment to the United States Constitution. This conduct shocks the conscious given that Defendants COUNTY and DOES 1-50 were on notice that DECEDENT had been arrested with opioids on his person, was observably under the influence of high risk substances at the time he was in the custody of Defendant COUNTY, and was exhibiting signs of serious medical emergency and/or withdrawal for hours to days before his death. Despite being informed of DECEDENT's condition, Defendant COUNTY Sheriff's deputies, and/or medical and non-medical personnel at SCVH-CHS and/or Elmwood Correctional Facilities (DOES 1-50), failed to timely provide DECEDENT with any medical and/or detoxification services, and only summoned emergency transportation services after DECEDENT was in critical condition and likely had already suffered cardiac arrest.

40. Defendants DOES 1-50 knew, or reasonably should have known, that by removing DECEDENT from SCVH-CHS (a medical facility) to a non-medical facility, and then by not performing any wellness checks and/or hands-on first aid and/or transporting DECEDENT to the

hospital, DOES 1-50 were subjecting DECEDENT to a substantially greater risk than if they had applied first aid or timely summoned medical care.

41. As a result, Defendants DOES 1-50 on behalf of Defendant COUNTY showed a clear indifference to the life of DECEDENT, which resulted in his death.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(Violation of the Fourteenth Amendment – PLAINTIFFS' Right to a Familial Relationship)**
**42 U.S.C. § 1983)**
**(PLAINTIFFS against ALL DEFENDANTS)**

19. Plaintiffs hereby re-allege and incorporate by reference all paragraphs in this complaint.

20. As a legal cause of Defendants' acting under color of law, acts and/or inactions, and whose deliberate indifference caused injuries which resulted in DECEDENT'S death, PLAINTIFFS were deprived of their constitutional rights to a familial relationship, in violation of rights, privileges, and immunities secured by the Fourteenth Amendments to the United States Constitution.

21. Defendant COUNTY deputies, agents, employees, and/or staff's (DOES 1-50) indifference to DECEDENT's need for crisis intervention shocks the conscious. Defendants' deliberately ignored DECEDENT, even though he posed no threat to the deputies. Defendants' actions ultimately prevented PLAINTIFFS from exercising their rights to a familial relationship with DECEEDENT.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
**(Municipal Liability under *Monell*)**
**(42 U.S.C. § 1983)**
**(Plaintiff Against Defendants COUNTY, and DOES 26-50)**

42. Plaintiffs re-allege and incorporate by reference herein all paragraphs of this Complaint.

43. As set forth above, Defendants DOES 1-26, individually and as law enforcement personnel and/or facility staff for Defendant COUNTY, deprived DECEDENT of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

44. Plaintiffs are informed and believe, and thereupon allege, that Defendants DOES 26-50, are superior officers and/or policy-making officials for Defendant COUNTY. Upon information and belief, Defendants COUNTY and DOES 26-50 customarily allowed its law enforcement and/or correctional facility personnel to behave as Defendants KRISTIN WALSH, ALEXANDER CHYORNY, and DOES 1-25 are herein alleged to have acted with DECEDENT, such as by ignoring known serious medical needs and by failing to provide adequate medical care or conduct health and wellness checks. Defendants 26-50 knew of and condoned similar behavior by COUNTY personnel against individuals similarly situated to DECEDENT.

45. Between the year 2018 and the date of DECEDENT'S death in COUNTY custody on November 17, 2024, there were approximately eighty-one (81) in-custody deaths in Defendant COUNTY correctional facilities, including at Elmwood where DECEDENT was kept in unsafe and unconstitutional conditions of confinement leading to his death as herein alleged. Included among those eighty-one custodial deaths are many instances in which the decedents were brought into COUNTY custody while presenting serious medical issues related to intoxication and/or substance use disorders. Those people, like DECEDENT in this case, died as a result of COUNTY correctional personnel failing to adequately prescribe or follow any emergency medical procedures to prevent death and/or serious injury. These deaths resulted from the acts or omissions by COUNTY correctional personnel who owed a duty of safe confinement and care, including by failing to provide adequate medical accommodations for people who, like DECEDENT, were in the custody of and known by COUNTY personnel to be at critical risk of substance toxicity requiring medical treatment and/or regular health and safety monitoring.

46. Since 2018, Defendant COUNTY'S Office of Medical Examiner-Coroner reported multiple similar past instances of in-custody deaths leading up to DECEDENT'S death in Elmwood Facility while in COUNTY CUSTODY. Such past similar incidents include but not are limited to:

i) January 28, 2018, death by methamphetamine toxicity complicating hypertensive cardiovascular disease following and during physical encounters with COUNTY law enforcement personnel.

ii) February 25, 2018, death by methamphetamine intoxication complicating profound physical exertion and police restraint.

iii) July 28, 2019, a 28-year-old man died in COUNTY custody at the SCC "Main Jail" that from a seizure. (Case No. 19-02095)

iv) November 15, 2018, a man in COUNTY custody died at the main jail due to complications with acute methamphetamine intoxication and cardiomegaly. (Case No. 18-03164)

v) November 7, 2019, a 43-year-old male in COUNTY custody died in from complications of methamphetamine induced dilated cardiomyopathy. (Case No. 19-03126).

vi) March 7, 2020, a 61-year-old female in COUNTY custody at Elmwood died from complications of hepatic cirrhosis. (Case No. 20-00798).

vii) March 19, 2020, a 58-year-old male in COUNTY custody at Elmwood died from diabetic ketoacidosis. (Case No. 20-00940).

viii) July 22, 2021, a 32-year-old male in COUNTY custody at Elmwood died from combined fentanyl and 4-ANPP toxicity. (Case No. 21-03184).

ix) November 22, 2021, a 25-year-old female died in COUNTY custody from complications of combined ethanol and probable fentanyl toxicity. (Case No. 21-04785)

x) February 20, 2022, a 44-year-old male died in COUNTY custody at Elmwood from mixed drug (fentanyl, methamphetamine, and 4-ANPP) toxicity. (Case No. 22-00881)

xi) July 6, 2022, a 28-year-old male died in COUNTY custody from complications from probable methamphetamine toxicity. (Case No. 22-02561).

xii) Just three days after that, on July 9, 2022 a 45 year old male died in COUNTY custody from methamphetamine intoxication complicating heart disease in the setting of intense pathophysiology. (Case No. 22-02579).

xiii) Four days later, on July 13, 2022, a 34-year-old male died in COUNTY custody from complications of Hypoxic-Ischemic encephalopathy status post Cardiac Arrest due to Methamphetamine Intoxication. (Case No. 22-02666).

xiv) May 31, 2023, a 57-year-old male died of acute coronary artery thrombosis and methamphetamine toxicity in COUNTY custody at Elmwood. (Case No. 23-01978)

xv) June 10, 2023, a 35 year old female in COUNTY custody died from combined diazepam, trazadone, diphenhydramine, hydroxyzine, methamphetamine and 4-ANPP toxicity during jail intake by COUNTY staff. (Case No. 23-02090).

xvi) October 19, 2023, a 35 year old male died in COUNTY custody from complications of hypoxic-ischemic encephalopathy due to prolonged cardiac arrest due to probable fentanyl toxicity. (Case No. 23-03534).

xvii) February 4, 2024, a 59 year old male died in COUNTY custody from complications due to Polysubstance use including methamphetamine. (Case No. 24-00491).

47. Despite having knowledge of each of the above incidents, Defendants DOES 26-50, in their capacity as the ultimate policymaking authorities for Defendant COUNTY, failed to institute and enforce lawful and proper training, procedures, and policies within the COUNTY to safeguard against future similar violations.

48. At all relevant times during DECEDENT'S medically-unsafe confinement by law enforcement and other personnel of the Defendant COUNTY's correctional facility (DOES 1-25), and continuing to the present day, Defendant COUNTY'S supervisory and policymaking authorities (DOES 26-50) acted with gross negligence and with reckless and deliberate indifference to the rights and liberties of DECEDENT and the public by knowingly and/or negligently failing to adopt, maintain, reform, and/or enforce practices, procedures, and policies in the following areas:

   a. Arrests and Arrest Procedure with respect to individuals known or suspected to be under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl;

   b. Detentions and Detentions Procedure with respect to individuals known or suspected to be under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl;

   c. Restraint Types, Holds, and Procedures during incidents involving individuals known or suspected to be under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl;

    d. Reasonable Accommodations for detained individuals known or suspected to be under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl;

    e. First Aid and Medical Care with respect to individuals known or suspected to be under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl;

    f. Report Writing and Notification to appropriate COUNTY detention facility and/or law enforcement personnel with respect to detained individuals known or suspected to be under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl;

    g. Bias-Based Policing with respect to individuals known or suspected to be under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl;

    h. Duty to Intervene and/or intercede against unsafe conditions of confinement with respect to individuals known or suspected to be under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl;

    i. Internal Affairs Investigations with respect to the in-custody or custodial-related deaths of individuals known or suspected to be under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl.

49. Defendants DOES 1-50, as decision-makers for the policies and practices with Defendant COUNTY'S correctional facilities, acted with the deliberate indifference to the foreseeable effects and consequences of these constitutionally-deficient policies (or lack thereof) with respect to the constitutional rights of DECEDENT and other individuals similarly situated. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants DOES 1-50, individually and under color of law; acted with intentional, reckless, and callous disregard for the rights of DECEDENT. Each of their actions was willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities. Furthermore, the policies, practices and customs implemented and maintained and still tolerated by Defendant COUNTY, were affirmatively linked to and were significantly influential forces behind Plaintiff's injuries.

50. As a result, Defendants COUNTY and DOES 1-50 are liable for *Monell* violations.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(Violations of Title II of the Americans with Disabilities Act)**
**(42 U.S.C. § 12132)**
**(Plaintiffs, as Co-Successors-In-Interest to DECEDENT, Against All DEFENDANTS)**

51. Plaintiffs hereby re-allege and incorporate by reference herein all paragraphs of this Complaint.

52. DECEDENT was a disabled individual due to his drug addiction pursuant 28 C.F.R. § 35.108, subdivision (b)(2).

53. At all times DECEDENT as a disabled pretrial detainee was qualified to participate in or receive the benefits of Defendant COUNTY'S (a government agency) services, programs, or activities, including but not limited to medical treatment, supervision, wellness checks, showering, and/or sleeping.

54. Defendant COUNTY, by and through the acts and/or omissions of Defendants DOES 1-50, intentionally failed to make reasonable accommodations for DECEDENT with respect to the aforementioned services, programs, or activities while he was detained at COUNTY'S Elmwood Correctional Facility.

55. At all relevant times, Defendants DOES 1-50 knew that DECEDENT needed reasonable accommodations for his disability, but failed to make such accommodations. DECEDENT was intentionally excluded by Defendants COUNTY and DOES 1-50 from participating in, or denied the benefits of those services, programs, or activities, or otherwise discriminated against.

56. Such exclusion, denial, or discrimination was by reason of DECEDENT'S disability.

57. As a result of the intentional exclusion, denial, or discrimination by COUNTY correctional personnel on approximately November 15 to 18, 2024, DECEDENT died.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**

**(Negligence)**
**(PLAINTIFFS, as Co-Successors-In-Interest to DECEDENT, against All DEFENDANTS)**

58. Plaintiffs hereby re-allege and incorporate by reference herein all paragraphs of this Complaint.

59. The present action is brought pursuant to sections 820 and 815 of the California Government Code. California Government Code, Section 815.6 specifies that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Pursuant to section 820 of the California Government Code, as public employees, Defendants COUNTY and DOES 1-50 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, Defendants DOES 1-50 were acting within the course and scope of their employment and/or agency with Defendants COUNTY. As such, Defendant COUNTY is liable in *respondeat superior* and under Gov. Code §§ 815-820 for the injuries caused by the acts and omissions of Defendant pursuant to section 815.2 of the California Government Code.

60. DEFENDANTS negligently and without due care refused to provide DECEDENT with medical care, including but not limited to withdrawal and/or welfare monitoring, detoxification, emergency, and/or life-saving services. Instead, Defendant COUNTY, and their employees allowed DECEDENT to suffer and die from an otherwise preventable condition.

61. Defendants COUNTY and DOES 1-50 breached their duty of safety owed to DECEDENT under the laws of the State of California and the United States Constitution.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**(Wrongful Death - C.C.P. Section 377.60 and 377.61)**
**(PLAINTIFFS, as successors in interest to DECEDENT, against ALL DEFENDANTS)**

62. Plaintiffs hereby re-allege and incorporate by reference herein all paragraphs of this Complaint.

63. DEFENDANTS COUNTY and DOES 1-25 placed DECEDENT in an unreasonably dangerous position likely to cause serious bodily injury and/or death through the above-described acts and/or omissions. Such conduct was extreme, unreasonable and outrageous. Defendants DOES 1-50, under color of their authority as sworn law enforcement and/or detention facility staff and/or supervisors and policymakers for Defendant COUNTY, negligently failed to provide medical services that would have prevented the unnecessary death of DECEDENT. The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of DECEDENT'S constitutionally protected rights, welfare, and safety.

64. DEFENDANTS' conduct caused DECEDENT to suffer physical injury, pain and suffering, loss of income, loss of life, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

65. In engaging in the above-described conduct, Defendants intentionally ignored or recklessly disregarded the foreseeable risk that DECEDENT would suffer extreme emotional distress as a result of each of their conduct. Defendants were on notice that DECEDENT was under the influence and/or withdrawing from opioids, amphetamines, benzodiazepines, and/or fentanyl; However, Defendants failed to monitor or place DECEDENT under adequate medical detox services.

66. Pursuant to Government Code Section 815.2(a), Defendant COUNTY is vicariously liable to said Plaintiffs for injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants and/or failure to intervene.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## JURY DEMAND

Plaintiffs hereby demands a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1. For general damages according to proof;

     2.     For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

     3.     Any and all permissible statutory damages;

     4.     For reasonable attorney's fees pursuant to 42 U.S.C. §§1983 and 1988;

     5.     For injunctive relief as the court deems appropriate including County of Santa Clara policy or policies relevant to authorizing, allowing, or ratifying the practice by its Jail Personnel of being deliberately indifferent to death threats directed toward inmates;

     6.     For punitive damages and exemplary damages in amounts to be determined according to proof as to defendants DOES 1-50 and/or each of them;

     7.     For cost of suit herein incurred; and

     8.     For such other and further relief as the Court deems just and proper.

Dated: August 13, 2025               **BURRIS NISENBAUM CURRY & LACY, LLP**

                                                /s/ *Katherine MacElhiney*
                                                Katherine MacElhiney
                                                Benjamin Nisenbaum
                                                James Cook
                                                Attorneys for Plaintiffs